**In re George W. HOLDER, Debtor.**

**Bankruptcy No. 91–07135.**

United States Bankruptcy Court,
M.D. Tennessee.

April 28, 1995.

Randal Mashburn, Baker Donelson Bearman & Caldwell, Nashville, TN, for Chapter 11 Trustee William Lamar Newport.

Richard F. Clippard, Asst. U.S. Atty., Nashville, TN, for U.S. Customs Service.

John R. Keenan, Sp. Asst., U.S. Atty., Nashville, TN, for I.R. Service.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

### I.  Introduction

This matter is before the Court on the United States Customs Service's ("Customs") objection to a proposed Agreed Order between the Chapter 11 Trustee and the Internal Revenue Service ("IRS") which compromised and settled the IRS's claims, including the treatment of a tax refund owed by the IRS to the estate. Customs asserts a right to setoff against the IRS tax refund for prepetition debts owed by the debtor. For the reasons stated herein, the Court overrules Customs' objection and finds that Customs waived the right to assert its setoff.

### II.  Facts

The history of this matter is largely undisputed by the parties. The debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 24, 1991. Customs asserted a claim against the estate in the amount of $2,388,729.10. On June 10, 1993, the Court approved entry of an Agreed Order between the Trustee and Customs settling Customs' claim and granting Customs an allowed claim of $75,000 to be paid as a Class 18 unsecured claimant under the Plan. Customs agreed that the remainder of its claim would be subordinated to all unsecured, non-penalty claims.

On April 29, 1993, an order was entered confirming the Trustee's First Amended Chapter 11 Plan. The Plan provides that all Class 18 unsecured claimants be treated equally, sharing pro rata in interim distributions in addition to a final distribution from the estate. Both the Plan and Disclosure Statement, mentioned the possibility of a tax refund pursuant to the Trustee's Investigation of the debtor's prepetition tax returns [1]. In fact, the Plan specifically acknowledges the Trustee's right to continue to review Debtor's tax returns from prior years to determine if a refund was owed.

In cooperation with the debtor, amended returns were filed for previous and appropriate years, and the IRS conducted an audit covering the tax years 1986 through 1990. Although many items between the debtor and IRS were in dispute, the parties reached an agreement whereby a final refund figure of $174,000.00 was decided upon. The IRS proposed that, in light of the audit results, it would waive and withdraw its claims against the estate and tender to the estate the refund proceeds as compromise and settlement of the refund and the IRS's claim against the estate. The parties memorialized their understanding in a proposed Agreed Order which was submitted to the court with the appropriate notice and opportunity for objections [2].

Two objections were raised in response to the proposed IRS Agreed Order. The first objection was raised by the debtor asserting that he was entitled to the proceeds, and the second by Customs seeking to setoff its claim against the refund proceeds. The Court overruled the debtor's objection [3], and the sole issues for determination are whether Customs has a valid right of setoff under 11 U.S.C. § 553(a), and whether it can exercise that right against the refund proceeds. An integral part of that determination is the

---

1. Debtor's Statements and Schedules also contemplated a possible IRS refund.

2. The proposed Agreed Order between the IRS and the Trustee provides in relevant part as follows:

    9. In light of the results of the audit, the IRS is now prepared to formally withdraw and waive its claims against the Bankruptcy Estate and pay over to the Bankruptcy Estate the refund proceeds. To the extent that the resolution of the various disputed issues arising out of the audit constitutes a compromise and settlement on the part of the Bankruptcy Estate, the Trustee is seeking formal approval of the Court, with appropriate opportunity for objections.

    10. With the withdrawal of the claims by the IRS, approximately $55,000.00 that has been held in escrow for the benefit of the IRS has now been made available for distribution to unsecured creditors. Therefore, the escrowed funds plus the refund amount, there is an additional amount of approximately $150,000.00 available to unsecured creditors beyond that which was originally expected at the time the Chapter 11 Plan was confirmed.

3. See Memorandum and Order overruling Debtor's objection filed December 24, 1994.

interaction of § 553 (allowing setoff) and § 1141 (binding effect of Plan) of the Bankruptcy Code.

## III. Discussion

The issue of setoff by a creditor following confirmation of a Chapter 11 or Chapter 13 Plan has been the subject of considerable debate among the circuits and various bankruptcy courts. The seminal case on this issue is the Ninth Circuit's decision in *Carolco Television Inc. v. National Broadcasting Co. (In re De Laurentiis Entertainment Group, Inc.)*, 963 F.2d 1269 (9th Cir.), *cert. denied* — U.S. —, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992). The Ninth Circuit directly addressed the interplay of 11 U.S.C. § 553 and 11 U.S.C. § 1141.

In that case, De Laurentiis Entertainment Group, Inc. emerged from Chapter 11 bankruptcy proceedings as the reorganized debtor, Carolco Television, Inc. ("CTI"). CTI then sued the National Broadcasting Company ("NBC") concerning a prepetition debt owed by NBC to CTI's predecessor in interest. In defense, NBC asserted a right of setoff. CTI's Plan had been confirmed by the bankruptcy court, and NBC had not previously raised its right to setoff or filed any objection to the debtor's Plan.

The court noted that Section 1141 and Section 553 were in direct conflict under the facts of this case. Section 1141 provides a discharge of prepetition debts, and that any assets retained by the debtor are free and clear of any prepetition debts,[4] while section 553 protects a creditor's right to setoff from the "operation of the remainder of the bankruptcy code.[5]" *De Laurentiis*, 963 F.2d at 1272. The issue for decision, therefore, was which code section controls.

The Ninth Circuit found that § 553 was the dominant section under the facts presented. In *De Laurentiis* the court relied upon the language and structure of § 553 and that section's underlying policies. In addition the court reviewed four analogous types of setoff cases: (1) cases considering the conflict between § 553 and § 1327, the majority of which have determined that § 1327 takes precedence over § 553[6]; (2) cases considering the conflict between § 553 and § 524(a)(2), the majority of which have deter-

---

**4.** Section 1141 provides that:

(a) Except as provided in subsection (d)(2) and (d)(3) of this section, the provisions of a confirmed Plan bind ... any creditor ... whether or not such creditor has accepted the Plan.

.    .    .    .    .

(c) Except as provided in subsection (d)(2) and (d)(3) of this section and except as otherwise provided in the Plan of in the order confirming the Plan, after confirmation of a Plan, the property dealt with by the Plan is *free and clear of all claims and interests of creditors* ...

(d)(1) Except as otherwise provided in this subsection, in the Plan, or in the order confirming the Plan, *the confirmation of a Plan—*
  (A) *discharges the debtor from any debt that arose before the date of such confirmation* ...

11 U.S.C. § 1141 (1994) (emphasis added).

**5.** Section 553 provides that:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, *this title does not affect any right of a creditor to offset a mutual debt* owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...

11 U.S.C. § 553 (1994) (emphasis added).

**6.** *See United States ex rel. I.R.S. v. Norton*, 717 F.2d 767, 774 (3d Cir.1983) (finding creditor's failure to object to confirmation of the Plan barred it from asserting setoff post-confirmation); *In re Hackney*, 20 B.R. 158, 159 (Bankr.D.Idaho 1982) (holding creditor bound by terms of payment as provided for in the confirmed Plan and creditor had no right to setoff post-confirmation); *In re Holcomb*, 18 B.R. 839, 841 (Bankr.S.D.Ohio 1982) (alternative holding); *In re Alexander*, 31 B.R. 389 (Bankr.S.D.Ohio 1983) (holding setoff was barred because § 1327 vests property of the estate in the debtor, and creditor did not object to confirmation); *In re Warden*, 36 B.R. 968, 972 (Bankr.D.Utah 1984) (holding unasserted right to setoff was waived upon confirmation); *see also U.S. v. Johnson (In re Johnson)*, 136 B.R. 306 (Bankr.M.D.Ga.1991) (debtor's confirmed Plan precluded IRS setoff if debtor could show IRS adequately protected, but confirmation does not forfeit a creditor's right to setoff).

*But see In re Warwick*, 179 B.R. 582 (Bankr. W.D.Ark.1995) (confirmation of Chapter 13 Plan does not preclude creditor's right to setoff); *In re Tillery*, 179 B.R. 576 (Bankr.W.D.Ark.1995) (same); *In re Olson*, 175 B.R. 30 (Bankr.D.Neb. 1994); *United States v. Orlinski (In re Orlinski)*, 140 B.R. 600, 602 (Bankr.S.D.Ga.1991) (holding that confirmation of Chapter 13 Plan does not bar setoff of mutual prepetition debts).

mined that § 553 must prevail over § 524(a)(2)[7]; (3) cases considering the interaction of § 68 and § 14 of the old Bankruptcy Act, the majority of which find § 68 (predecessor to § 553) is dominant[8]; and (4) two previous cases which have addressed this exact issue, both of which reached opposite results[9]. *Carolco*, 963 F.2d at 1275–76.

The *De Laurentiis* court reasoned that if section 1141 [providing that creditors are bound by the confirmed Plan] were to take precedence over section 553 [allowing setoff] then setoff would be allowed in Chapter 11 only where they were written into the Plan of reorganization. *De Laurentiis*, 963 F.2d at 1277. Furthermore, such an interpretation, according to the Ninth Circuit, would render section 553 meaningless. The court also emphasized the long and historical role of the equitable concept of setoff and noted that if Congress had intended to depart from the common law by allowing section 1141 to take precedence over section 553, it would have expressly stated so. *Id.*

Several courts since the Ninth Circuit's decision in *De Laurentiis* have confronted the question of the role of § 553 in a post-confirmation context. *Pettibone Corp. v. United States (In re Pettibone)*, 161 B.R. 960 (N.D.Ill.1993) (dictum, "we do not agree with (the debtor) that the Confirmation Order, § 524, or the Plan prohibits such setoff."), *aff'd in part, remanded in part on other grounds*, 34 F.3d 536 (7th Cir.1994) (finding

accounting method used by IRS not a setoff and declining to address issue raised in *De Laurentils* ); *see also Winter v. Glaze (In re Glaze)*, 169 B.R. 956 (Bankr.D.Ariz.1994) (citing with approval *De Laurentiis*, and recognizing superiority of § 553 over debtors' asserted homestead exemption to proceeds received from the sale of real estate in Chapter 7 where debtors attempted to manipulate Arizona exemption laws to insulate them from their own improper actions); *In re Whitaker*, 173 B.R. 359 (Bankr.S.D.Ohio 1994) (holding confirmation of debtor's Chapter 13 Plan did not affect IRS's right to setoff tax refund against debtor's unpaid tax liability). No case since the *De Laurentiis* decision, however, has directly addressed the supposed conflict between § 1141 and § 553 in the context of an asserted right to setoff post-confirmation in a Chapter 11 where the creditor raised no objection to the Plan.

In the present case, Customs asserts that it has a valid right to offset against the refund proceeds, and that the right of setoff survives confirmation. The Trustee argues that the Customs Agreed Order and/or confirmation of the Plan without an objection from Customs, precludes any right that Customs may have once held to setoff.

■ In order to even reach the issue of whether the right of setoff survives post-confirmation, Customs must first establish that a valid right to setoff exists under 11

---

7. *See In re Davidovich*, 901 F.2d 1533, 1538–39 (10th Cir.1990); *Friedlander v. Doherty*, 851 F.Supp. 515 (N.D.N.Y.1994); *Camelback Hospital, Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 237–37 (9th Cir. BAP 1991) (also noting most cases hold that a valid setoff claim cannot be defeated by a discharge in bankruptcy); *In re Morgan*, 77 B.R. 81, 85 (Bankr. S.D.Miss.1987); *Krajci v. Mt. Vernon Consumer Discount Co.*, 16 B.R. 464, 466 (Bankr.E.D.Pa. 1981) (discharge does not affect setoff under section 553); *In re Morgan*, 77 B.R. 81, 84–85 (Bankr.S.D.Miss.1987); *In re Conti*, 50 B.R. 142, 149 (Bankr.E.D.Va.1985); *In re Ford*, 35 B.R. 277, 280 (Bankr.N.D.Ga.1983); *In re Slaw Constr. Corp.*, 17 B.R. 744, 747–48 (Bankr. E.D.Pa.1982).

But see *Gribben v. U.S. (In re Gribben)*, 158 B.R. 920 (S.D.N.Y.1993); *In re Dezarn*, 96 B.R. 93, 94–95 (Bankr.E.D.Ky.1988); *In re Johnson*, 13 B.R. 185, 188–89 (M.D.Tenn.1981) (finding

§ 524(a)(2) enjoined not only affirmative recovery of a discharged debt, but also the setoff of a discharged debt against a postpetition judgment).

8. *See Record Club of America v. United Artists Records*, 80 B.R. 271, 278 (Bankr.S.D.N.Y.1987); *In re Reading Co.*, 72 B.R. 293, 294–95 (Bankr. E.D.Pa.1987) (allowing setoff in section 77 reorganization case); *Marley v. United States*, 381 F.2d 738, 742, 180 Ct.Cl. 898 (1987) (provision that debts were "free and clear of liens" did not bar setoff).

9. *In re Newport Offshore*, 86 B.R. 325, 326 (Bankr.D.R.I.1988) (concluding in an alternative holding that setoff was discharged); *In re Service Decorating Co.*, 105 B.R. 859, 862 (Bankr.N.D.Ill. 1989) (stating in dictum that a creditor could assert as a setoff a prepetition liability after confirmation); *see also Matter of Crabtree*, 76 B.R. 208 (Bankr.M.D.Fla.1987) (finding setoff discharged by confirmation of Plan).

U.S.C. § 553(a) by showing the following elements:

1) A debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case;

2) A claim of the creditor against the debtor which arose proper to the commencement of the bankruptcy case;

3) The debt and the claim are mutual obligations; and

4) A right to setoff the debts under nonbankruptcy law.

*DuVoisin v. Foster (In re Southern Industrial Banking Corp.)*, 809 F.2d 329 (6th Cir. 1987); *In re Whitaker*, 173 B.R. 359 (Bankr. S.D.Ohio 1994). The debts owed, must be mutual as of the date of the original petition for relief. *Whitaker*, 173 B.R. at 361.

The parties do not dispute that both the debt owed to Customs and the refund due from the IRS are the result of prepetition debts. However, the parties do have some polemic as to whether mutuality exists between Customs and the IRS.

■ Customs asserts its mutuality arises by virtue of its parity with the IRS as a branch of the United States of America. This court is satisfied that ample authority exists recognizing mutuality between different governmental units [10]. *See e.g., In re Medina*, 177 B.R. 335 (Bankr.D.Or.1994); *In re Thomas*, 84 B.R. 438 (Bankr.N.D.Tex.), *rev'd on other grounds, United States v. Thomas (In re Thomas)*, 91 B.R. 731 (N.D.Tex.1988); *In re Sound Emporium, Inc.*, 48 B.R. 1 (Bankr.W.D.Tex.1984), *aff'd* 70 B.R. 22 (W.D.Tex.1987) (holding IRS allowed to setoff a debt owed by the U.S. Army to the debtor against the IRS' claim for unpaid taxes). While many courts have acknowledged mutuality between different governmental units, setoff has been denied in

a large number of cases for equitable reasons such as denial of the debtor of a meaningful chance to reorganize. In this instance, however, the Court finds that Customs has shown that mutuality does in fact exist between itself and the IRS as branches of the United States government.

The parties do not dispute that a right to setoff exists under nonbankruptcy law; nor does the Trustee or any other party assert that one of the three exceptions to setoff set forth in § 553(a) applies to this case. The Court therefore finds that Customs has satisfied the requirements of § 553(a), thereby retaining its prepetition right to setoff.

Having determined that Customs has demonstrated that all of the elements of a valid setoff right exist, the Court must now determine whether Customs may exercise that right. The Trustee asserts that Customs waived its right to setoff by virtue of one or all of the following: (1) by entering into an Agreed Order with the Trustee regarding settlement and treatment of its claim in the Chapter 11 Plan; (2) by failing to object to confirmation of the Plan; and/or (3) by the IRS entering into an Agreed Order allowing payment of the refund to the estate, Customs has also agreed to payment of the refund to the estate by virtue of its mutuality.

■ The plain language of § 553 provides that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title (11), *this title does not affect any right of a creditor to offset.*" 11 U.S.C. § 553(a) (1994) (emphasis added). "This title," meaning TITLE 11, includes the provisions of 11 U.S.C. § 1141. It does not appear to this Court that § 553(a) and § 1141 are in conflict with one another as found by the court in *De Laurentiis*. In fact, § 553 is clear that once the requirements for demon-

---

**10.** Courts are somewhat divided on mutuality when two different government agencies are involved. For those cases finding mutuality does exist see *In re Bennett Co. Inc.*, 118 B.R. 564 (M.D.Tenn.1990) (finding state tax refunds could be setoff against the debtor's liabilities to other state agencies); *United States ex rel. Small Business Admin. v. Rinehart*, 88 B.R. 1014 (D.S.D. 1988), *aff'd in part, rev'd in part*, 887 F.2d 165 (8th Cir.1989); *In re Britton*, 83 B.R. 914 (Bankr. E.D.N.C.1988); *In re Butz*, 154 B.R. 541

(S.D.Iowa 1989); *In re Mohar*, 140 B.R. 273 (Bankr.D.Mont.1992). Some of the cases finding that mutuality does not exist include: *In re Ionosphere Clubs, Inc.*, 164 B.R. 839 (Bankr.S.D.N.Y. 1994); *Illinois v. Lakeside Community Hosp., Inc*, 151 B.R. 887 (N.D.Ill.1993); *In re Hancock*, 137 B.R. 835 (Bankr.N.D.Okla.1992); *In re Pyramid Industries, Inc.*, 170 B.R. 974 (Bankr.N.D.Ill. 1994); *Westamerica Bank v. United States*, 1995 WL 89292, 178 B.R. 493 (N.D.Cal.1995).

strating a right to setoff have been established, that right of setoff is not affected by any provision of title 11, except, as noted in section 553(a) itself, sections 362 and 363. Besides these sections, no other provision of Title 11 operates to change an established right to setoff. Accordingly, § 1141 does not impair Customs' right of setoff.

It is well understood in law, however, that the application of setoff is permissible, not mandatory, and lies within the equitable discretion of the court. *DuVoisin v. Foster (In re Southern Industrial Banking Corp.)*, 809 F.2d 329, 332 (6th Cir.1987); *United States ex rel. I.R.S. v. Norton*, 717 F.2d 767, 772 (3d Cir.1983); *In re Johnson*, 136 B.R. 306, 311 (Bankr.M.D.Ga.1991). While § 553 provides that title 11 does not affect a creditor's right to setoff, nowhere does that section prohibit a creditor from waiving that right. *See e.g., In re Stephenson*, 84 B.R. 74, 78–79 (Bankr.N.D.Tex.1988). Furthermore, it is clear from other cases that the government, as a creditor, can be found to have waived its right to setoff. *In re Cloverleaf Farmer's Co-op.*, 114 B.R. 1010, 1018 (Bankr.D.S.D.1990) (holding Small Business Administration could not setoff funds ASCS has unconditionally disbursed); *In re Wilson*, 49 B.R. 19, 21 (Bankr.N.D.Tex.1985) (finding Small Business Administration waived its right to setoff when IRS paid tax refund).

The common law concept of setoff is a right, not a lien. Setoff is an exercisable prerogative, not a natural right conclusively established because the parties have a claims against one another. *In re Stephenson*, 84 B.R. 74, 77–78 (Bankr.N.D.Tex.1988) (citing 80 C.J.S., *Setoff and Counterclaim* § 3 (1953)). Furthermore, the law is well-settled the right to setoff is not self-executing or automatic, but that setoff is a privilege which must be asserted or else it is waived and lost.

*Id., In re Metropolitan International Inc.*, 616 F.2d 83, 85 (3d Cir.1980); *see also* 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 553.07 (15th Ed.1993). If a creditor's conduct is inconsistent with a subsequent claim of setoff, that creditor may be found to have waived the setoff right. *Cumberland Glass Manufacturing Co. v. Charles De Witt and Co.*, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915); *In re Medina*, 177 B.R. 335, 350 (Bankr.D.Or.1994).

The bankruptcy court in *In re Medina*, 177 B.R. 335 (Bankr.D.Or.1994) found a waiver of a right to setoff on the part of the IRS by its inconsistent actions. In that case, the IRS simultaneously filed a motion to deny use of cash collateral which included accounts receivable arising out of a United States Department of Agriculture (USDA) contract, and a motion to lift the automatic stay to setoff against monies the debtor was owed under the USDA contracts. Subsequently, the IRS withdrew its first motion, and entered into a stipulation with the debtor-in-possession allowing use of the cash collateral pending a decision on its motion for setoff. The *Medina* court held that "(b)y allowing the debtor-in-possession use of the cash collateral it is clear that the IRS waived its right of setoff against those funds." *Medina*, 177 B.R. at 351–52.

Similarly, this Court finds that by entering into an Agreed Order with the Trustee settling its claims, Customs acted incompatibly with its right of setoff thereby waiving its valid right to setoff.[11]

The Agreed Order between the Trustee and Customs states in relevant part as follows:

7. The claim of Customs in the amount of $2,388,729.10 shall be treated as a Class 18 unsecured claim under the First Amended Chapter 11 Plan in the amount of $75,-

---

11. Whether Customs waived its right to assert its setoff by virtue of the Agreed Order between the IRS and the Trustee is easily answered. The proposed Agreed Order between the Trustee and the IRS was subject to notice and objections and had not yet become final. *See* UNITED STATES BANKRUPTCY COURT (MIDDLE DISTRICT OF TENNESSEE) LOCAL RULE 1.4. Even assuming that the IRS and Customs were one in the same for purposes of

negotiation and drafting of the proposed order, the IRS could still have filed an objection to its own proposed order before the order became final.

The issue of whether Customs waived its right to assert its setoff by its failure to object to confirmation of the Plan, is best saved for another day, and is specifically pretermitted.

000.00, *for purposes of any distribution to Customs.*

8. Any claim of Customs in excess of the $75,000.00 figure, shall be subordinated to all other creditors' non-penalty claims. In the event that it appears that unsecured unsubordinated creditors will be paid in full and that excess funds may be available to be distributed on any subordinated claim, either party may seek determination by the Court of the allowed amount of any additional claim Customs may have against the bankruptcy estate.

9. This agreement is not intended and shall not be construed to affect the rights of the Debtor or Customs with regard to any claim Customs may have that may be pursued against the Debtor in light of the prior Order of this Court approving the Debtor's waiver of discharge. The Agreed Order is limited to a determination of the amount of Customs' claim for Class 18 distribution purpose with all other issues expressly reserved for future determination by this Court or other court of competent jurisdiction.

The Trustee asserts that the very terms of this Agreed Order bind Customs to treatment of its claim under the terms of the Plan, and that by agreeing to this specific treatment of its claim, Customs waived any right of setoff. Customs argues that not only is its right of setoff not limited by this Agreed Order,[12] but also that the language of paragraph Nine specifically limited the application and scope of the Agreed Order while preserving its right to pursue any other claim avenues.

The Court is convinced that the clear language of the Agreed Order states that Customs assented to be bound to the Plan as a Class 18 claimant, and that it agreed that *all distributions* relative to its Class 18 claim were to be made only through the terms of the Plan. Paragraph Nine relates specifically to Customs' right to pursue any claim it had with respect to the debtor's waiver of his discharge, not distribution under the Plan as a Class 18 claimant.[13]

For the reasons stated herein, therefore, the Court overrules Customs' objections to the Agreed Order between the Trustee and the IRS. Customs' right to setoff was waived by its entry into the Agreed Order consenting to the treatment of its claims, actions which this Court finds clearly inconsistent with a subsequent assertion of its right to setoff.

The Court will enter an Order accordingly, and this Memorandum constitutes the Court's findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

It is, THEREFORE, so ordered.

---

12. At the hearing on this matter, Customs argued that it could not have asserted its right of setoff at an earlier time because it did not know of the right. Specifically, Customs contended that it could not have known of the existence of a refund until it was told that a refund existed by the IRS. However, the possibility of a refund was made known in the debtor's Statements and Schedules, the Disclosure Statement and the Plan. The Trustee made known to all creditors, including Customs, of his intention to pursue the possibility of an IRS refund. Just like all other creditors who voted to accept the Plan, Customs had notice. If Customs had been truly concerned about its potential right of setoff, it had every opportunity to preserve that right by a provision in its Agreed Order with the Trustee discussing treatment of its claims or by insisting on such a provision in the confirmed Plan.

13. Other courts have similarly found that a right to setoff has been waived by a creditor's action or inaction or for reasons of equity. *See e.g., DuVoisin v. Foster (In re Southern Industrial Banking Corp.),* 809 F.2d 329 (6th Cir.1987); *Brunswick Corp. v. Clements,* 424 F.2d 673 (6th Cir.1970), *cert. denied* 400 U.S. 1010 & 1013, 91 S.Ct. 564 & 569, 27 L.Ed.2d 623 & 627 (1971); *Paris v. Transamerica Ins. Group (In re Buckley & Assocs. Ins., Inc.),* 78 B.R. 155 (E.D.Tenn.1987).

Judge Kelley, writing for the Bankruptcy Court for the Eastern District of Tennessee noted in *Weems v. United States (In re Custom Center, Inc.),* 163 B.R. 309, 317 (Bankr.E.D.Tenn.1994) that equitable grounds for denying setoff may arise more quickly in a Chapter 11, 12, or 13 case citing *In re Stephenson,* 84 B.R. 74 (Bankr. N.D.Tex.1988); *Edelsberg v. Thompson McKinnon Securities, Inc. (In re Edelsberg),* 101 B.R. 386 (Bankr.S.D.Fla.1989); and *In re Britton,* 83 B.R. 914, 920 (Bankr.E.D.N.C.1988) (finding that a creditor waives its right to setoff in a Chapter 11 or 12 case by failing to assert setoff in an original proof of claim).